UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Crim. No. 3:15cr70(RNC) |
|---|---|
| v. | |
| JASON CHICKOS | January 5, 2016 |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Jason Chickos, faces sentencing on his conviction of one count of conspiring to distribute anabolic steroids.  His guideline range is 0-6 months, based on the quantity of steroids involved in the offense, his acceptance of responsibility, his lack of a criminal record and his qualification for the safety valve reduction.  Chickos has filed a sentencing memorandum asking for a sentence of one year of probation.  The Government agrees that a sentence of probation, and not incarceration, is warranted in this case and defers to the Court as to the proper length of that term.

## I.     BACKGROUND

In approximately October 2014, the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), and Homeland Security Investigations ("HSI") began an investigation into several individuals who were connected to Steven Santucci, a Newtown Police Department Sergeant who was manufacturing anabolic steroids for distribution. In late February 2015, after six months of investigation that included several controlled purchases of anabolic steroids, the DEA, FBI and HSI received authorization to intercept telephone calls and text messages over co-defendant Mark Bertanza's and Alex Kenyhercz's cellular telephones. By March 2015, they received authorization to intercept electronic and wire communications over Santucci's personal cellular telephone. During more than two months of interceptions, it became

clear that Santucci was manufacturing large quantities of anabolic steroids and pharmaceutical drugs and distributing his products to other steroid re-sellers, including Chickos and his co-defendants, most of whom were in, or had been in, law enforcement positions.

On June 3, 2015, a federal grand jury sitting in Bridgeport returned a twelve-count Superseding Indictment against Santucci, Chickos, Bertanza, Kenyhercz and seven other defendants charging various controlled substance offenses. Chickos was charged only in Count One, with conspiring to distribute and to possess with the intent to distribute anabolic steroids. He was originally arrested on a complaint on April 29, 2015 and has been released on bond during the pendency of this case.   According to the Pre-Sentence Report ("PSR"), he has remained compliant with the conditions of his release.   See PSR ¶ 5.

On October 19, 2015, Chickos pleaded guilty to Count One of the Superseding Indictment. At the time of the guilty plea, he entered into a written plea agreement.   In the plea agreement, the parties stipulated that the quantity of anabolic steroids involved in the offense was greater than 5,000 units, but not greater than 10,000 units, resulting in a base offense level of 12.   The Government agreed to recommend a two-level reduction for acceptance of responsibility, resulting in an adjusted offense level of 10.   The parties also agreed that Chickos fell into Criminal History Category I. Finally, they recognized that Chickos could qualify for an additional two-level reduction under the safety valve guideline (U.S.S.G. § 5C1.2), for a potential total offense level of 8 and a guideline range of 0-6 months' incarceration.   Chickos waived his right to appeal and/or collaterally attack his sentence provided that it did not exceed 6 months in jail, a life term of supervised release, a $100 special assessment, a $500,000 fine and forfeiture of the $2354 in cash seized from him at the time of his arrest.

In conjunction with his guilty plea, Chickos entered into the following factual stipulation

for his offense conduct:

> 1.      During the time period specified in the Indictment, the defendant joined a conspiracy, that is, he knowingly and voluntarily agreed with others named in his Indictment, to distribute and to possess with intent to distribute anabolic steroids.

> 2.      During the course of the defendant's involvement in the conspiracy, he purchased anabolic steroids from Steven Santucci on numerous occasions. Chickos purchased the anabolic steroid with the intent to distribute it.   The defendant was also aware that several other individuals, including Alex Kenyhercz, were purchasing anabolic steroids from the Santucci for resale, and that Santucci manufactured the anabolic steroids.

> 3.      The amount of anabolic steroids the defendant personally possessed with intent to distribute and/or reasonably knew was being distributed by his co-conspirators was in excess of 5,000 units.

During the Rule 11 plea canvass, the Government set forth, in substance, the following factual basis for the guilty plea: Beginning in approximately 2009, Santucci, a sergeant with the Newtown Police Department, started manufacturing anabolic steroids, which he then sold to approximately seven or eight co-conspirators for further sale and distribution.   Santucci kept his redistribution network small so as to limit the chance of exposure.   Among the redistributing co-conspirators was Chickos, who was a Newtown Police dispatcher and, who, on occasion, picked up orders of anabolic steroids from Santucci in the Newtown Police Department. Chickos would then sell some of the anabolic steroids to his customers for profit.   Over the course of the conspiracy, Santucci instructed Chickos and his other redistributors to use a texting application called "WhatsApp" to impede any law enforcement scrutiny of their illegal activity. Chickos and others used code words to further disguise the orders they placed for anabolic steroids. Chickos's anabolic steroid orders followed a pattern, but increased in quantity and frequency in the months leading up to his arrest on April 29, 2015.

The PSR found that the base offense level, under Chapter Two of the November 1, 2014

3

version of the Sentencing Guidelines, was 12 because Chickos was involved in the distribution of at least 5,000 units, but not more than 10,000 units, of anabolic steroids. <u>See</u> PSR ¶ 47. It subtracted two levels for Chickos's acceptance of responsibility and two levels for the safety valve reduction, resulting in a total offense level of 8. <u>See</u> PSR ¶¶ 48, 54, 55. Chickos has no criminal record and falls into Criminal History Category I.  <u>See</u> PSR ¶¶ 56-58.  Based on a total offense level of 10 and a Criminal History Category I, Chickos faces a guideline incarceration range of 0-6 months.  <u>See</u> PSR ¶ 90. As to the advisory probationary term, the guideline range is at least one year, but not more than five years.  <u>See</u> PSR ¶ 94.

Chickos has submitted a sentencing memorandum asking for a sentence of one year of probation and no fine.  By this memorandum, the Government agrees with Chickos that an incarceration term is not warranted here and defers to the Court both as to the length of the probationary term and whether a fine is appropriate.

## II.    <u>DISCUSSION</u>

After the Supreme Court's holding in <u>United States v. Booker</u>, 543 U.S. 220, 243-245 (2005) rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a) factors; and (3) impose[] a reasonable sentence."  <u>See</u> <u>United States v. Fernandez</u>, 443 F.3d 19, 26 (2d Cir.), <u>cert. denied</u>, 127 S. Ct. 192 (2006); <u>United States v. Crosby</u>, 397 F.3d 103, 113 (2d Cir. 2005).  The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c)

4

to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims.   See 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness.   See Rita v. United States, 127 S. Ct.  2456, 2459 (2007).   The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)."   United States v. Canova, 412 F.3d 331, 350 (2d Cir. 2005).

In this case, there are several important factors to consider.   First, despite what will likely be a claim by all of the defendants in this case, the underlying offense conduct was serious.   At the outset of this investigation, the DEA received reports that some individuals had gotten sick from steroids manufactured by Santucci.   Moreover, repeated use of steroids can cause troubling changes in behavior, as demonstrated most prominently by co-defendant Jeffrey Gentile, who told Kenyhercz in April 2015, "Like that shit ain't good. Yo, I felt, like yo, I'm done. But then I got so mad, yo, I was like on a deathwish with dude yo. Like I've never felt that way before. I was like yo I grabbed my shotgun, I went down to Bridgeport, I was like I'm gonna die tonight yo, I'm gonna kill this dude."   Kenyhercz responded, "Yeah, well like I said, it's not something, yeah, yeah, it could be part of the Test (testosterone), but you know what it is, it's your estrogen levels, because what happens is when you take a shot you feel 3-4 days and it's after that, what's happening is your levels are getting so high after 3,4, 5, 6 weeks that your body is producing more estrogen to balance out your testosterone levels. So you got get something to get that under control. So, when I see you tonight, we're square away and I'll pick you up some fucking estrogen blockers." Based

5

on this intercepted conversation, there was a real concern that Gentile was armed and might be a threat to another individual.   As a result, law enforcement officers decided to end the wiretap abruptly and conduct the arrests.

Second, several defendants in this case, including Chickos, were either currently or formerly in law enforcement. Chickos was a dispatcher at the Newtown Police Department and sometimes purchased steroids from Santucci at the police department.   He certainly knew that his actions in distributing steroids to as many as ten different customers was criminal and involved far more serious conduct than simple drug use or possession.

Third, prior to this arrest and other than his involvement in the use and distribution of steroids, Chickos has led a law abiding life. He has been able to find full-time employment despite the charge here. And though he readily admitted to having distributed steroids to about ten others and estimated his profit to be about $1,000 per month, his early involvement in the distribution of steroids was motivated by his own repeated use of the drug.

In the Government's view, a proper balancing of the § 3553(a) factors leads to the conclusion that an incarceration term is unnecessary here and is overly harsh.   Instead, a sentence of probation can accomplish the goals of specific and general deterrence and can reflect both the serious nature of the offense and the personal characteristics of the defendant.

## III.     **CONCLUSION**

For the reasons stated above, the Government respectfully asks the Court to sentence Chickos to a period of probation.   As to the length of the term of probation, the requirement of any special conditions of probation (including home detention and community service) and the imposition of a fine, the Government defers to the Court's discretion.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

/s/ *Robert M. Spector*
ROBERT M. SPECTOR
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT18082
157 CHURCH STREET; 23rd FLOOR
NEW HAVEN, CT 06510
203-821-3746

### C E R T I F I C A T I O N

I hereby certify that on January 5, 2016, the foregoing Sentencing Memorandum was filed electronically.   Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

/s/ *Robert M. Spector*
ROBERT M. SPECTOR
ASSISTANT UNITED STATES ATTORNEY